UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 24-CR-0389 (TNM) |
| | : | |
| JOSHUA RYAN DALE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR HEARING TO SHOW CAUSE
ON REVOCATION OF RELEASE ORDER**

The United States of America, by and through its undersigned attorney, respectfully moves the Court pursuant to 18 U.S.C. § 3148(b) to hold a hearing for defendant Joshua Ryan Dale to show cause why the release order in his case should not be revoked for violations of the terms of his pre-trial release. As set out below, there is clear and convincing evidence that he has violated numerous conditions of release, and he is unlikely to abide by any condition or combination of conditions of release. This Court already ordered an in-person hearing on October 25, 2024 in light of the pretrial violation report, and the government thus – in advance of the hearing – provides its position and argument.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

**A. The Offenses**

As previously detailed in court filings, the defendant traveled with others to the Washington, D.C. area on January 5, 2021, staying at a hotel in the area that night and attending the "Stop the Steal" rally on January 6, 2021. The defendant went to the rally, then after the speeches concluded he moved towards the U.S. Capitol Building's west front, where he joined the mob in ascending the steps and entering the Capitol Building through the Senate Wing Door only minutes after it was violently breached by others. The defendant, his face covered by a bandana,

1

then turned to his right and traveled south toward the Crypt. He returned a few minutes later to the Senate Wing Door hallway. After returning, the defendant and another unidentified rioter picked up a wooden historical marker and used it as a battering ram against an interior door of the Capitol. The defendant then made his way north and east within the Capitol Building and exited through the Senate Carriage Door on the east side of the Capitol.

The defendant was charged in a criminal complaint on March 22, 2024 with violations of 18 U.S.C. § 1361 (Destruction of Government Property), 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(4) (Act of Physical Violence in a Restricted Building or Grounds), 40 U.S.C. § 5104(e)(2)(D) (Disorderly or Disruptive Conduct in the Capitol Grounds or Building ), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building ). ECF 1. A misdemeanor information was filed on August 26, 2024, charging the defendant with the same crimes charged in the complaint. ECF 28.

### B. Procedural Posture

The defendant was arrested in Tennessee on March 27, 2024, ECF 5, and made his initial appearance in the District of Columbia on April 4,2024, where standard conditions of his release were set. ECF 8. Subsequent to the filing of this release order, three pretrial violation reports were filed, ECF 12, ECF 16, and ECF 18. The defendant's conditions of release were then amended on May 24, 2024, to include a curfew from 10:00 p.m. to 6:00 a.m. each day and radio frequency location monitoring. ECF 19.  The defendant has remained under these same conditions since that date, though three additional violation reports have since been filed. ECF 21, ECF 27, and ECF

32. In its most recent violation report, the Pretrial Services Agency for the District of Columbia is recommending program removal. ECF 32 at 6. The government concurs.

### C. The Defendant's Performance on Pretrial Release

In less than seven months on pretrial supervision, the defendant has violated no less than ten separate conditions of his pretrial release, most of which he has violated on multiple occasions. He has violated the reporting requirement, the address condition, the drug testing condition, the condition prohibiting the use of controlled substances, the firearms/weapons condition, the condition requiring truthfulness with Pretrial Services, the medical/psychiatric treatment condition, the curfew condition, the substance abuse therapy and counseling condition, and the mental health assessment and treatment condition. The culmination of this abysmal record of non-compliance was his final text message to his supervising officer on October 2, 2024 - "I wish yaw would just leave me alone. I don't know, yaw, don't want to know yaw".

Although cataloged in more detail in the six separate pretrial violation reports, below is a chronological list of the many violations of which the defendant has accumulated while on pretrial release.

On March 7, 2024, during an interview with the office providing courtesy supervision, Pretrial Services Agency for the Eastern District of Tennessee/Knoxville ("Pretrial"), the defendant stated that he had been residing at a specific residence in Tennessee for the preceding three years. On April 4, 2024, the defendant reported a different address, claiming that he had lived at that residence for the preceding six months. Pretrial then made multiple unsuccessful attempts between April 4 and April 26, 2024, to conduct a home visit at the defendant's reported residence but when they would attempt to set one up the defendant would reply to Pretrial that he was

3

working and unable to talk. Finally, on April 26, 2024, the defendant admitted to Pretrial that he had deliberately provided false address information to them.

On April 30, 2024, during an initial home visit at a third location provided by the defendant, Pretrial discovered two loaded and chambered rifles, two crossbows, over 100 rounds of ammunition, 14 arrows, a silencer, various crossbows, a machete, and a baton at the defendant's residence. When questioned by Pretrial, the defendant lied and denied knowledge and ownership of the firearms, only later admitting to possessing and owning them.

On May 30, 2024, the defendant submitted a positive drug test for amphetamine, methamphetamine, and marijuana. That same day a home visit was conducted by Pretrial, during which additional arrows were removed from the residence.

On June 2, 2024, the defendant's electronic monitoring device registered that the strap had been tampered with. The defendant told Pretrial that the strap had gotten caught on a trailer and had broken. That same day the defendant was given a referral for a substance abuse and mental health assessment, but he refused to contact the provider.

On June 22, 2024, the defendant arrived home 22 minutes after his 10:00 p.m. curfew. The defendant received a verbal warning.

On July 22, 2024, the defendant returned to his residence at 10:54 p.m., citing late work hours. The defendant again received a verbal warning.

On July 27, 2024, the defendant returned to his residence at 12:50 a.m. after an authorized trip to North Carolina which required him to return by 12:00 a.m. The defendant was informed that he was in violation of his curfew condition.

On July 29, 2024, the defendant submitted a positive drug test for methamphetamine. On that same day the defendant was given a referral for substance abuse/mental health treatment due to his positive drug test for methamphetamine. The defendant refused the referral.

On August 1, 2024, the defendant returned to his residence at 10:52 p.m., telling Pretrial that he had a really important job and was not concerned that he did not have permission to be out late. The defendant was informed that he was in violation of his curfew condition.

On August 29, 2024, Pretrial conducted its last home visit of the defendant. This is because subsequent attempts by Pretrial to conduct home visits have been met with claims by the defendant that he works too far away and works from the sunup to sundown seven days a week, or that he has already left his residence and could not meet with Pretrial at his residence. Pretrial has offered to accommodate the defendant by arranging the visit around the defendant's schedule with no success.

On September 3, 2024, at the direction of Pretrial, the defendant attended an intake appointment at a medical outpatient center in Knoxville, Tennessee, and was scheduled for a follow-up appointment with the intake nurse and for medication management on September 17, 2024. The defendant failed to report for the follow-up appointment. As of October 4, 2024, the defendant had failed to reschedule the appointment and had not signed a release of information as requested by Pretrial to allow them to receive treatment updates.

On September 16, 2024, the defendant departed his residence at 5:05 am, returning at 5:46 a.m. in violation of his curfew. When questioned regarding the reason for his departure, the defendant claimed that his dog had been hit, though he never provided Pretrial any documentation to corroborate this claim. He was deemed to be in violation of his curfew.

On September 18, 2024, the defendant departed from his residence at 10:17 p.m., returning at 10:27 pm, and provided no reason for his absence. He was deemed to be in violation of his curfew.

On September 23, 2024, the defendant's location monitoring device received a "power loss alert" at 10:52 a.m. When contacted by his supervising officer at 9:21 p.m. inquiring about the alert, the defendant initially claimed that the power had been disconnected and later reconnected, then alternatively claimed that his father-in-law had likely accidentally unplugged the device to charge his phone. The defendant concluded by texting, "Quite frankly I'm getting tired of this I was told once I gave a clean drug screen that it would come off my ankle here we are still confined".

On September 28, 2024, the defendant departed from his residence at 11:35 p.m., returning at 11:52 p.m., and provided no reason for his absence. He was deemed in violation of his curfew.

On September 29, 2024, the defendant's device received a "transmitter no motion alert" from 3:56 a.m. to 8:20 a.m., indicating that the defendant failed to exhibit any movement for a significant period. Pretrial attempted to contact the defendant and his wife multiple times that day but were unsuccessful and received no replies from him. During the day, the monitoring records indicated that the defendant left his residence and returned home three separate times. However, the defendant did not respond to Pretrial's repeated attempts to contact him. The defendant eventually responded at 7:09 p.m.

On September 30, 2024, his supervising officer texted the defendant informing him that the defendant needed to set a time to come in for a check on his location monitoring equipment and to discuss recent concerns regarding compliance with conditions of release. The defendant replied, "How do yaw expect me to be successful and have a stress-free environment when I have

to jump through hoops for yaw and yaw have done not a damn thing for me but make my life as of now an incoviemce And what happened exxatly? I've been in compliance with my stupid ass curfew I have video footage in my home every night before my curfew and my wife and son as witnesses. Please let me know what the issue is". Pretrial responded, "We will talk about it in the office". The defendant replied, "I'm not coming in office I have a life that's more important my work is more important my jobs and clients are more important than yaw".

The defendant's last contact with Pretrial before submission of the most recent violation report was on October 2, 2024, when the defendant sent the following text message, "I wish yaw would just leave me alone. I don't know, yaw, don't want to know yaw." The defendant failed to report to the office that day as required and therefore he was unable to submit a required drug test.

## **LEGAL STANDARD**

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to revocation of release." Upon the government's motion to revoke a release order, such as the instant motion, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release." 18 U.S.C. § 3148(b). Once before the Court:

> [t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –
>
> (1) Finds that there is – (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) Finds that – (A) based on the factors set forth in section 3142(g) … , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id.*

## **ARGUMENT**

The defendant's astonishing record of non-compliance provides clear and convincing evidence that he has violated numerous conditions of release, multiple times. And his track record, attitude, and own statements to Pretrial clearly demonstrate that he is unlikely to abide by any condition or combination of conditions of release which might be set, fully justifying program removal and remand to custody under 18 U.S.C. § 3148(b). Simply put, the defendant does not appear to take seriously the Court-imposed release conditions, or have respect for the process of which he has entered.

The defendant began his pretrial supervision by lying about his residence, then made repeated excuses for why he could not meet Pretrial to conduct a home visit at a residence where he was not living. When he finally admitted that he had lied to Pretrial and they were able to finally conduct a home visit, he lied again to them about ownership of the cache of prohibited weapons seized from that residence. When confronted on numerous, repeated location tracking program violations his excuses to Pretrial, when he has bothered to make them, have run from shifting stories to uncorroborated stories to an uncorroborated variation of the 'dog ate my homework'' excuse.

Often his non-compliance is plainly intentional. In addition to the numerous lies to Pretrial about his residence, his weapons, and his other violations, in June he flatly refused to contact a health care provider to schedule a substance abuse and mental health assessment and in July he refused a referral for a dual diagnosis treatment program after he had tested positive for drug use for the second time. Even when he finally did attend an intake appointment with another treatment program in September, he was a no-show for his follow-up appointment and never even rescheduled it.

The nature and extent of the defendant's non-compliance is remarkable, not only in its frequency but in its brazenness. He has shown no interest in conforming to the reasonable and necessary conditions of his release order and he has frustrated every attempt by Pretrial to supervise him. The disruptive nature of the crimes with which he is charged, the troubling discovery of the weapons found in his home while he was under a court order prohibiting the possession of these weapons, and his ongoing substance abuse all strongly warrant continued pretrial supervision, yet, in reality, he is completely unamenable to supervision. His behavior while on release is ultimately untenable for continued supervision.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court order the defendant, pursuant to 18 U.S.C. 3148(b), to show cause why his release order should not be revoked and why he should not be detained pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  *Joseph S. Smith, Jr.*
JOSEPH S. SMITH, JR.
Assistant United States Attorney
CA Bar No. 200108
601 D Street, N.W.
Washington, D.C. 20001
(619) 546-8299
Joseph.s.smith@usdoj.gov